**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

|  |  |
|---|---|
| Deborah Kay Unversaw, | |
| Plaintiff, | Civil Action No: 1:23-cv-01040 |
| v. | |
| Equifax Information Services LLC, Experian Information Solutions, Inc., TransUnion LLC, Mortgage Solutions of Colorado, LLC., d/b/a Mortgage Solutions Financial, and Indiana University Credit Union, | **COMPLAINT AND** |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

**COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF**
**THE FAIR CREDIT REPORTING ACT**

**INTRODUCTION**

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

2. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

3. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

4. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer

1

reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

5.  The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

6.  The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.

7.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

8.  Deborah Unversaw ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), TransUnion LLC ("TU"), Mortgage Solutions of Colorado, LLC., d/b/a Mortgage Solutions Financial ("MSF"), and Indiana University Credit Union ("IUCU") (jointly as "Defendants"), regarding erroneous reports of derogatory credit information and Defendants' failure to maintain maximum possible accuracy as to Plaintiff's credit reports.

9.  While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

10.  Unless otherwise stated, all the conduct engaged in by Defendants took place in Indiana.

11.  Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

12. Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1681 *et seq*.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendants transacts business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

15. Plaintiff resides in this District.

## PARTIES

16. Plaintiff is an adult individual and is "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

17. Defendant Equifax is a business entity doing business in the Southern District of Indiana.

18. Defendant Equifax's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

19. Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

20. Defendant Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

21. Defendant Experian is a business entity doing business in the Southern District of Indiana.

22. Defendant Experian's registered agent address is: CT Corporation System, 334 North Senate Avenue, Indianapolis, IN, 46204.

23.    Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

24.    Defendant Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

25.    Defendant TU is a business entity doing business in the Southern District of Indiana.

26.    Defendant TU's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

27.    Defendant TU regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

28.    Defendant TU is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

29.    Defendant MSF is a business entity doing business in the Southern District of Indiana.

30.    Defendant MSF's business address is: 5455 N. Union Blvd., Colorado Springs, CO 80918; with a registered agent address of Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

31.    Defendant MSF is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

32.    Defendant IUCU is a business entity doing business in the Southern District of Indiana.

33.    Defendant IUCU's residence agent address is: Bryan Price, 105 East Winslow Road, Bloomington, IN 47401.

34.    Defendant IUCU is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

35.    Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

36.    Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

37.    Plaintiff is informed and believes and, on that basis, alleges that at all times mentioned herein each Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each respective Defendant is liable to Plaintiff for the relief prayed for herein.

## FACTUAL ALLEGATIONS

38.    Sometime on or before November 2020, Plaintiff purchased a home that was financed with a mortgage (the "Mortgage").

39.    The Mortgage was serviced by MSF (the "MSF Account").

40.    Sometime on or before January 2018, Plaintiff purchased a vehicle that was secured by an auto loan held by IUCU (the "IUCU Account").

41.    On or about December 30, 2021, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana.  Plaintiff's case was assigned Case Number 21-05739-RLM-13 (the "Bankruptcy").

42.    On or about February 16, 2021, Plaintiff filed an Amended Chapter 13 Plan.

43.   The MSF Account and IUCU Account were each identified in Plaintiff's Chapter 13 Plan as accounts to be paid outside of the bankruptcy plan and directly to the respective creditors.

44.   This designation and treatment of the MSF Account and the IUCU Account in the Bankruptcy means that each account remains unaffected by the Bankruptcy and the Chapter 13 Plan specifically notes that direct pay secured creditors, such as MSF and IUCU, are not paid through the Trustee conduit and a specific nonstandard provision applies to them.

45.   The Chapter 13 Plan provided a nonstandard provision that stated:

> For all creditors receiving direct payments outside the Trustee conduit as specified under 8(d) of this plan (direct pay), the original contract terms are not changed or modified. The payment due dates, application of payments, assessment of late fees and attorney fees, and balances owed are controlled by the original contract. The direct pay debts herein described shall not be subject to discharge unless this case is converted to a case under chapter 7, 11, 12 or if the debtor files a motion to modify this Chapter 13 Plan under 11 U.S.C. § 1329 changing the treatment of the specified creditor and or debt.

46.   For those creditors subject to the above noted nonstandard provision in the confirmed Chapter 13 Plan, there is an obligation for those creditors who choose to credit report to do so in conformity with the original contractual terms agreed upon between the parties.

47.   This means that creditors who credit report must report the balance of the account, along with the recent payment, payments made, and the current status of those payments.

48.   Additionally, since Plaintiff is paying MSF and ICUC directly on their respective accounts, the balance and payment information on each account should be reflected upon Plaintiff's credit reports, as nothing stands between Plaintiff and the ongoing contractual relationships she has with those respective creditors.

49.   MSF received notice of the Chapter 13 Plan.

50.    IUCU received notice of the Chapter 13 Plan.

51.    On or about March 22, 2022, Plaintiff's Chapter 13 Plan was confirmed.

52.    Plaintiff has faithfully made monthly payments to MSF.

53.    Plaintiff has faithfully made monthly payments to IUCU.

54.    Despite the confirmed Chapter 13 Plan, the MSF Account was reported by MSF, Experian, TU, and Equifax without a balance or payment information on Plaintiff's respective Experian, TU, and Equifax credit reports.

55.    As a result, MSF, Experian, TU, and Equifax reported the MSF Account on Plaintiff's credit reports in an inaccurate, incomplete, and/or materially misleading way.

56.    Despite the confirmed Chapter 13 Plan, the IUCU Account was reported by IUCU, Experian, TU, and Equifax without a balance or payment information on Plaintiff's respective Experian, TU, and Equifax credit reports.

57.    As a result, IUCU, Experian, TU, and Equifax reported the IUCU Account on Plaintiff's credit reports in an inaccurate, incomplete, and/or materially misleading way.

58.    Plaintiff's creditors and potential creditors have accessed Plaintiff's credit reports while the misreporting described herein was on Plaintiff's credit reports and were misinformed by Defendants about Plaintiff's credit worthiness.

### *MSF and Experian's Inaccurate Reporting of the MSF Account*

59.    Sometime before May 23, 2022, MSF and Experian were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the MSF Account.

60.    Upon information and belief, the MSF Account was reported on the Experian report with no balance, no amount paid, and no payment history.

61.   Upon information and belief, the MSF Account also reported on the Experian report with bankruptcy information, suggesting that the MSF Account was included in or subject to discharge in the Bankruptcy.

62.   By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the MSF Account, MSF and Experian were incorrectly making it appear as if the MSF Account did not have a balance or a positive payment status.

63.   Instead, the MSF Account reported as though it was closed, with no balance or recent payment information and that the account would be discharged in bankruptcy.

64.   It is inaccurate, incomplete, and/or materially misleading for MSF and Experian to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy court.

65.   However, MSF and Experian either reported or caused to be reported inaccurate information as discussed herein.

### IUCU and Experian's Inaccurate Reporting of the IUCU Account

66.   Sometime before May 23, 2022, IUCU and Experian were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the IUCU Account.

67.   Upon information and belief, the IUCU Account was reported on the Experian report with no balance, no amount paid, and no payment history.

68.   Upon information and belief, the IUCU Account also reported on the Experian report with bankruptcy information, suggesting that the IUCU Account was included in or subject to discharge in the Bankruptcy.

69.   By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the IUCU Account, IUCU and Experian were incorrectly making it appear as if the IUCU Account did not have a balance or a positive payment status.

70.    Instead, the IUCU Account reported as though it was closed, with no balance or recent payment information and that the account would be discharged in bankruptcy.

71.    It is inaccurate, incomplete, and/or materially misleading for IUCU and Experian to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy court.

72.    However, IUCU and Experian either reported or caused to be reported inaccurate information as discussed herein.

### *MSF and Equifax's Inaccurate Reporting of the MSF Account*

73.    Sometime before May 23, 2022, MSF and Equifax were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the MSF Account.

74.    Upon information and belief, the MSF Account was reported on the Equifax report with no balance, no amount paid, and no payment history.

75.    Upon information and belief, the MSF Account also reported on the Equifax report with bankruptcy information, suggesting that the MSF Account was included in or subject to discharge in the Bankruptcy.

76.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the MSF Account, MSF and Equifax were incorrectly making it appear as if the MSF Account did not have a balance or a positive payment status.

77.    Instead, the MSF Account reported as though it was closed, with no balance or recent payment information and that the account would be discharged in bankruptcy.

78.    It is inaccurate, incomplete, and/or materially misleading for MSF and Equifax to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy court.

79.     However, MSF and Equifax either reported or caused to be reported inaccurate information as discussed herein.

### *IUCU and Equifax's Inaccurate Reporting of the IUCU Account*

80.     Sometime before May 23, 2022, IUCU and Equifax were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the IUCU Account.

81.     Upon information and belief, the IUCU Account was reported on the Equifax report with no balance, no amount paid, and no payment history.

82.     Upon information and belief, the IUCU Account also reported on the Equifax report with bankruptcy information, suggesting that the IUCU Account was included in or subject to discharge in the Bankruptcy.

83.     By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the IUCU Account, IUCU and Equifax were incorrectly making it appear as if the IUCU Account did not have a balance or a positive payment status.

84.     Instead, the IUCU Account reported as though it was closed, with no balance or recent payment information and that the account would be discharged in bankruptcy.

85.     It is inaccurate, incomplete, and/or materially misleading for IUCU and Equifax to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy court.

86.     However, IUCU and Equifax either reported or caused to be reported inaccurate information as discussed herein.

### *MSF and TU's Inaccurate Reporting of the MSF Account*

87.     Sometime before May 23, 2022, MSF and TU were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the MSF Account.

88.    Upon information and belief, the MSF Account was reported on the TU report with no balance, no amount paid, and no payment history.

89.    Upon information and belief, the MSF Account also reported on the TU report with bankruptcy information, suggesting that the MSF Account was included in or subject to discharge in the Bankruptcy.

90.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the MSF Account, MSF and TU were incorrectly making it appear as if the MSF Account did not have a balance or a positive payment status.

91.    Instead, the MSF Account reported as though it was closed, with no balance or recent payment information and that the account would be discharged in bankruptcy.

92.    It is inaccurate, incomplete, and/or materially misleading for MSF and TU to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy court.

93.    However, MSF and TU either reported or caused to be reported inaccurate information as discussed herein.

### IUCU and TU's Inaccurate Reporting of the IUCU Account

94.    Sometime before May 23, 2022, IUCU and TU were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the IUCU Account.

95.    Upon information and belief, the IUCU Account was reported on the TU report with no balance, no amount paid, and no payment history.

96.    Upon information and belief, the IUCU Account also reported on the TU report with bankruptcy information, suggesting that the IUCU Account was included in or subject to discharge in the Bankruptcy.

97.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the IUCU Account, IUCU and TU were incorrectly making it appear as if the IUCU Account did not have a balance or a positive payment status.

98.    Instead, the IUCU Account reported as though it was closed, with no balance or recent payment information and that the account would be discharged in bankruptcy.

99.    It is inaccurate, incomplete, and/or materially misleading for IUCU and TU to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy court.

100.   However, IUCU and TU either reported or caused to be reported inaccurate information as discussed herein.

### *Plaintiff's Experian Dispute*

101.   On or after August 26, 2022, Plaintiff sent a letter to Experian to dispute MSF and Experian's reporting of the MSF Account on Plaintiff's Experian credit report pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "Experian Dispute").

102.   Plaintiff also disputed Experian and IUCU reporting of the IUCU Account in the Experian Dispute.

103.   Specifically, Plaintiff explained in the Experian Dispute that the MSF Account and the IUCU Account were each being paid outside of Plaintiff's Chapter 13 Plan.

104.   Plaintiff requested that MSF and Experian list the current balance and the ongoing payments Plaintiff was making on the MSF Account, in compliance with Plaintiff's Chapter 13 Plan.

105.   Plaintiff further explained that the MSF Account is not subject to discharge in the Bankruptcy.

106.   Plaintiff also requested that IUCU and Experian list the current balance and the ongoing payments Plaintiff was making on the IUCU Account, in compliance with Plaintiff's Chapter 13 Plan.

107.   Plaintiff again explained that the ICUC Account is not subject to discharge in the Bankruptcy.

108.   Plaintiff attached supporting documents to the Experian Dispute, including the Chapter 13 Plan.

109.   Experian received Plaintiff's Experian Dispute.

110.   Upon receipt of the Experian Dispute, Experian was required to conduct reinvestigations into the MSF Account and the IUCU Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

111.   Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify MSF of Plaintiff's Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Experian Dispute for MSF to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

112.   Pursuant to 15 U.S.C. § 1681s-2(b), MSF had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

113.   A reasonable reinvestigation and/or investigation by Experian and MSF respectively would have indicated that they were reporting the MSF Account inaccurately, incompletely, and/or in a materially misleading way.

114.   However, after receipt of the Experian Dispute, Experian and MSF continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Experian credit report.

115.    Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify IUCU of Plaintiff's Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Experian Dispute for IUCU to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

116.    Pursuant to 15 U.S.C. § 1681s-2(b), IUCU had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

117.    A reasonable reinvestigation and/or investigation by Experian and IUCU respectively would have indicated that they were reporting the ICUC Account inaccurately, incompletely, and/or in a materially misleading way.

118.    However, after receipt of the Experian Dispute, Experian and IUCU continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Experian credit report.

### *Plaintiff's Equifax Dispute*

119.    On or after August 26, 2022, Plaintiff sent a letter to Equifax to dispute MSF and Equifax's reporting of the MSF Account on Plaintiff's Equifax credit report pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "Equifax Dispute").

120.    Plaintiff also disputed Equifax and IUCU reporting of the IUCU Account in the Equifax Dispute.

121.    Specifically, Plaintiff explained in the Equifax Dispute that the MSF Account and the IUCU Account were each being paid outside of Plaintiff's Chapter 13 Plan.

122.    Plaintiff requested that MSF and Equifax list the current balance and the ongoing payments Plaintiff was making on the MSF Account, in compliance with Plaintiff's Chapter 13 Plan.

123. Plaintiff further explained that the MSF Account is not subject to discharge in the Bankruptcy.

124. Plaintiff also requested that IUCU and Equifax list the current balance and the ongoing payments Plaintiff was making on the IUCU Account, in compliance with Plaintiff's Chapter 13 Plan.

125. Plaintiff again explained that the ICUC Account is not subject to discharge in the Bankruptcy.

126. Plaintiff attached supporting documents to the Equifax Dispute, including the Chapter 13 Plan.

127. Equifax received Plaintiff's Equifax Dispute.

128. Upon receipt of the Equifax Dispute, Equifax was required to conduct reinvestigations into the MSF Account and the IUCU Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

129. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify MSF of Plaintiff's Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Equifax Dispute for MSF to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

130. Pursuant to 15 U.S.C. § 1681s-2(b), MSF had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

131. A reasonable reinvestigation and/or investigation by Equifax and MSF respectively would have indicated that they were reporting the MSF Account inaccurately, incompletely, and/or in a materially misleading way.

132.    However, after receipt of the Equifax Dispute, Equifax and MSF continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Equifax credit report.

133.    Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify IUCU of Plaintiff's Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Equifax Dispute for IUCU to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

134.    Pursuant to 15 U.S.C. § 1681s-2(b), IUCU had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

135.    A reasonable reinvestigation and/or investigation by Equifax and IUCU respectively would have indicated that they were reporting the IUCU Account inaccurately, incompletely, and/or in a materially misleading way.

136.    However, after receipt of the Equifax Dispute, Equifax and IUCU continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Equifax credit report.

### *Plaintiff's TU Dispute*

137.    On or after August 26, 2022, Plaintiff sent a letter to TU to dispute MSF and TU's reporting of the MSF Account on Plaintiff's TU credit report pursuant to 15 U.S.C. § 1681i by notifying TU, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "TU Dispute").

138.    Plaintiff also disputed TU and IUCU reporting of the IUCU Account in the TU Dispute.

139.    Specifically, Plaintiff explained in the TU Dispute that the MSF Account and the IUCU Account were each being paid outside of Plaintiff's Chapter 13 Plan.

140.    Plaintiff requested that MSF and TU list the current balance and the ongoing payments Plaintiff was making on the MSF Account, in compliance with Plaintiff's Chapter 13 Plan.

141.    Plaintiff further explained that the MSF Account is not subject to discharge in the Bankruptcy.

142.    Plaintiff also requested that IUCU and TU list the current balance and the ongoing payments Plaintiff was making on the IUCU Account, in compliance with Plaintiff's Chapter 13 Plan.

143.    Plaintiff again explained that the ICUC Account is not subject to discharge in the Bankruptcy.

144.    Plaintiff attached supporting documents to the TU Dispute, including the Chapter 13 Plan.

145.    TU received Plaintiff's TU Dispute.

146.    Upon receipt of the TU Dispute, TU was required to conduct reinvestigations into the MSF Account and the IUCU Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

147.    Pursuant to 15 U.S.C. § 1681i, TU had a duty to notify MSF of Plaintiff's TU Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's TU Dispute for MSF to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

148.    Pursuant to 15 U.S.C. § 1681s-2(b), MSF had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

149.    A reasonable reinvestigation and/or investigation by TU and MSF respectively would have indicated that they were reporting the MSF Account inaccurately, incompletely, and/or in a materially misleading way.

150. However, after receipt of the TU Dispute, TU and MSF continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's TU credit report.

151. Pursuant to 15 U.S.C. § 1681i, TU had a duty to notify IUCU of Plaintiff's TU Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's TU Dispute for IUCU to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

152. Pursuant to 15 U.S.C. § 1681s-2(b), IUCU had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

153. A reasonable reinvestigation and/or investigation by TU and IUCU respectively would have indicated that they were reporting the IUCU Account inaccurately, incompletely, and/or in a materially misleading way.

154. However, after receipt of the TU Dispute, TU and IUCU continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's TU credit report.

### MSF, IUCU, and Experian's Continued Inaccurate Reporting after the Experian Dispute

155. Following MSF, IUCU, and Experian's respective investigations into the Experian Dispute, on or after October 20, 2022, Plaintiff received dispute results from Experian (the "Experian Dispute Results").

156. Experian and MSF failed to correct the inaccurate, incomplete, and/or materially misleading information on the MSF Account on the Experian Dispute Results.

157. Instead, on the Experian Dispute Results, MSF and Experian continued to report the MSF Account in an inaccurate, incomplete, and/or materially misleading way.

158. MSF and Experian's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the MSF Account was negative, with no balance or recent payment information.

159. MSF and Experian's reporting was also inaccurate and/or materially misleading because it contained a bankruptcy status that made it appear as though the MSF Account was subject to the Bankruptcy Plan and/or would be discharged in the Bankruptcy.

160. What should have been a positive account with positive payment information was instead reported as a negative account.

161. MSF and Experian's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the MSF Account were problematic because Plaintiff's dispute included relevant supporting documents, which MSF and Experian chose to ignore.

162. Experian and IUCU also failed to correct the inaccurate, incomplete, and/or materially misleading information on the IUCU Account on the Experian Dispute Results.

163. Instead, on the Experian Dispute Results, IUCU and Experian continued to report the IUCU Account in an inaccurate, incomplete, and/or materially misleading way.

164. IUCU and Experian's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the IUCU Account was negative, with no balance or recent payment information.

165. IUCU and Experian's reporting was also inaccurate and/or materially misleading because it contained a bankruptcy status that made it appear as though the IUCU Account was subject to the Bankruptcy Plan and/or would be discharged in the Bankruptcy.

166. What should have been a positive account with positive payment information was instead reported as a negative account.

167.    IUCU and Experian's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the IUCU Account were problematic because Plaintiff's dispute included relevant supporting documents, which IUCU and Experian chose to ignore.

168.    On February 24, 2023, Experian credit report, both the MSF Account and IUCU Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information, along with bankruptcy indicators.

169.    And again, on a June 8, 2023, Experian credit report, both the MSF Account and IUCU Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information, along with bankruptcy indicators.

### MSF, IUCU, and Equifax's Continued Inaccurate Reporting after the Equifax Dispute

170.    On or after October 24, 2022, Plaintiff received an Equifax credit report dated October 24, 2022 (the "Equifax October Credit Report").

171.    The Equifax October Credit Report indicated that the reinvestigations into Plaintiff's Equifax Dispute were still in progress on the MSF Account and IUCU Account despite Plaintiff sending the Equifax Dispute approximately two-months prior.

172.    Nonetheless, in the Equifax October Credit Report, in addition to the items addressed in Plaintiff's Equifax Dispute, both the MSF Account and IUCU Account were inaccurately reporting $0 balances.

173.    On or after February 23, 2023, Plaintiff received an Equifax credit report dated February 23, 2023 (the "Equifax February Credit Report").

174.    Equifax and MSF failed to correct the inaccurate, incomplete, and/or materially misleading information on the MSF Account as shown in the Equifax February Credit Report.

175.   Instead, on the Equifax February Credit Report, MSF and Equifax continued to report the MSF Account in an inaccurate, incomplete, and/or materially misleading way.

176.   MSF and Equifax's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the MSF Account was negative, with no balance or recent payment information.

177.   MSF and Equifax's reporting was also inaccurate and/or materially misleading because it contained a bankruptcy status that made it appear as though the MSF Account was subject to the Bankruptcy Plan and/or would be discharged in the Bankruptcy.

178.   What should have been a positive account with positive payment information was instead reported as a negative account.

179.   MSF and Equifax's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the MSF Account were problematic because Plaintiff's dispute included relevant supporting documents, which MSF and Equifax chose to ignore.

180.   Additionally, the MSF Account tradeline indicated that the reinvestigation into Plaintiff's Equifax Dispute was still in progress, despite Plaintiff sending the Equifax Dispute nearly six-months prior.

181.   If Equifax's reinvestigation into the Equifax Dispute was still in progress, then Equifax failed to conduct a reasonable reinvestigation into MSF Account within 30 days, as required by 15 U.S.C. § 1681i(a).

182.   Equifax and IUCU also failed to correct the inaccurate, incomplete, and/or materially misleading information on the IUCU Account as shown in the Equifax February Credit Report.

183. Instead, on the Equifax February Credit Report, IUCU and Equifax continued to report the IUCU Account in an inaccurate, incomplete, and/or materially misleading way.

184. IUCU and Equifax's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the IUCU Account was negative, with no balance or recent payment information.

185. IUCU and Equifax's reporting was also inaccurate and/or materially misleading because it contained a bankruptcy status that made it appear as though the IUCU Account was subject to the Bankruptcy Plan and/or would be discharged in the Bankruptcy.

186. What should have been a positive account with positive payment information was instead reported as a negative account.

187. IUCU and Equifax's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the IUCU Account were problematic because Plaintiff's dispute included relevant supporting documents, which IUCU and Equifax chose to ignore.

188. The IUCU Account tradeline also indicated that the reinvestigation into Plaintiff's Equifax Dispute was still in progress, despite Plaintiff sending the Equifax Dispute nearly six-months prior.

189. If Equifax's reinvestigation into the Equifax Dispute was still in progress, then Equifax failed to conduct a reasonable reinvestigation into IUCU Account within 30 days, as required by 15 U.S.C. § 1681i(a).

190. On a June 8, 2023, Equifax credit report, both the MSF Account and IUCU Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information, along with bankruptcy indicators.

191.  Additionally, on the June 8, 2023, Equifax credit report, both the MSF Account and IUCU Account inaccurately stated that the accounts were closed.

192.  The MSF Account and IUCU Account were not closed, as Plaintiff was continuing to make payments as agreed on the respective accounts.

### *MSF, IUCU, and TU's Continued Inaccurate Reporting after the TU Dispute*

193.  Following MSF, IUCU, and TU's respective investigations into the TU Dispute, on or after September 29, 2022, Plaintiff received dispute results from TU (the "TU Dispute Results").

194.  TU and MSF failed to correct the inaccurate, incomplete, and/or materially misleading information on the MSF Account on the TU Dispute Results.

195.  Instead, on the TU Dispute Results, MSF and TU continued to report the MSF Account in an inaccurate, incomplete, and/or materially misleading way.

196.  MSF and TU's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the MSF Account was negative, with no balance or recent payment information.

197.  MSF and TU's reporting was also inaccurate and/or materially misleading because it contained a bankruptcy status that made it appear as though the MSF Account was subject to the Bankruptcy Plan and/or would be discharged in the Bankruptcy.

198.  What should have been a positive account with positive payment information was instead reported as a negative account.

199.  MSF and TU's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the MSF Account were problematic because Plaintiff's dispute included relevant supporting documents, which MSF and TU chose to ignore.

200. On the TU Dispute Results, TU and/or IUCU failed to provide results of the reinvestigation of the IUCU Account.

201. Thus, upon information and belief, inaccurate, incomplete, and/or materially misleading information on the IUCU Account continued to report on Plaintiff's TU credit reports.

202. On February 24, 2023, TU credit report, both the MSF Account and IUCU Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information, along with bankruptcy indicators.

203. And again, on a June 8, 2023 TU credit report, both the MSF Account and IUCU Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information, along with bankruptcy indicators.

### *The Impact of Inaccurate or Misleading Information on Consumer Reports*

204. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

   i.    credit or insurance to be used primarily for personal, family, or household purposes;

   ii.   employment purposes; or

   iii.  any other purpose authorized under section 1681b.

205. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

206. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points.

*See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

207.    The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance.  *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

### *Credit Scoring*

208.    The Fair Isaac Corporation credit risk scoring system, also known as "FICO," is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/.

209.    Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer from reduced FICO credit scores.

210.    The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

 The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default.  *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

211.    FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories.  Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and

mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

212. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

213. Inaccurate, incomplete, and/or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

214. Here, the inaccurate, incomplete, and/or materially misleading reporting of the MSF Account and IUCU Account adversely affects Plaintiff's FICO score as Plaintiff's credit reports make it appear as though Plaintiff had not been paying on either account at all.

215. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; *i.e.*, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

216. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

### Defendants' Violations of the FCRA and Plaintiff's Damages

217. It is inaccurate, incomplete, and/or materially misleading to report an account does not have a balance when it does in fact have a balance.

218.   It is inaccurate, incomplete, and/or materially misleading to report an account does not have any payments made upon it when the consumer is in fact making payments on the account.

219.   It is inaccurate, incomplete, and/or materially misleading to suppress positive and accurate account balance and payment data.

220.   It is inaccurate, incomplete, and/or materially misleading to report an account is closed when it is open, and a consumer is paying for it as agreed.

221.   As evidenced by Experian's failure to report accurate information on the MSF Account and IUCU Account—despite having notice that the respective accounts in fact had a balance and recent payments, along with possessing relevant bankruptcy documents—Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

222.   Experian either ignored or failed to review all relevant information on the MSF Account and IUCU Account and thus failed to ensure maximum possible accuracy of the information concerning the individuals about whom the reports relate.

223.   As evidenced by Equifax's failure to report accurate information on the MSF Account and IUCU Account— despite having notice that the respective accounts in fact had a balance and recent payments, along with possessing relevant bankruptcy documents—Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

224.    Equifax either ignored or failed to review all relevant information on the MSF Account and IUCU Account and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

225.    As evidenced by TU's failure to report accurate information on the MSF Account and IUCU Account— despite having notice that the respective accounts in fact had a balance and recent payments, along with possessing relevant bankruptcy documents—TU failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

226.    TU either ignored or failed to review all relevant information on the MSF Account and IUCU Account and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

227.    Additionally, as evidenced by the inaccurate, incomplete, and/or materially misleading re-reporting after Plaintiff sent Defendants written disputes identifying the inaccurate, incomplete, and/or materially misleading information related to the MSF Account and IUCU Account, Defendants, upon receipt of Plaintiff's disputes, failed to conduct a reasonable investigations and/or reinvestigations with respect to the disputed information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

228.    Defendants failed to review all relevant information provided by Plaintiff in the disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

229.    Due to Defendants' failure to reasonably investigate and/or reinvestigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate, incomplete, and/or

materially misleading information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

230.  By reporting inaccurate, incomplete, and/or materially misleading account information after notice and confirmation of their errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

231.  Defendants' inaccurate, incomplete, and/or materially misleading reporting on the MSF Account and IUCU Account—in light of their knowledge of the positive data they could report on the respective accounts—was willful.  Plaintiff is, accordingly, eligible for statutory damages.

232.  Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

233.  Based upon Defendants' knowledge of each respective account and the data the Defendants possessed on each account, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under the FCRA.

234.  Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer actual damages, including, without limitation: fear of credit denials, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, humiliation, frustration, and emotional distress.

235.  Plaintiff entered bankruptcy after a divorce, job loss, and illness, to clean up and improve Plaintiff's credit, lay the groundwork for future credit, and to pay and resolve debts.

236. Upon information and belief, Plaintiff's Experian, Equifax, and Trans Union credit reports were published to third parties while the inaccurate information on the MSF Account and IUCU Account was reporting.

237. Instead of those third parties seeing the MSF and IUCU Accounts as positive accounts that Plaintiff was paying on every month, they instead appeared as negative accounts without any payment data.

238. This inaccurate, incomplete, and/or materially misleading information was published to those third parties.

239. Defendants thus caused a defamation-type harm upon Plaintiff.

240. Plaintiff made a commitment to pay her debts as agreed in bankruptcy in the hope of obtaining a fresh start and better credit but worries the inaccurate information concerning the MSF and IUCU Accounts will prevent that from occurring.

241. While the inaccurate information concerning the MSF and IUCU Accounts appeared on Plaintiff's credit reports, upon information and belief, Plaintiff was offered credit through Credit One, Mildstone, Aspire, and Capital One, but at terms less favorable than Plaintiff would have otherwise been offered due to how the MSF and IUCU Accounts were reporting on her credit reports.

242. Plaintiff believes the inaccurate reporting on the MSF and IUCU Accounts has negatively impacted her ability to refinance her mortgage.

243. If Plaintiff were able to refinance her mortgage, the monthly expense saved could be used by Plaintiff to fund her daughters' educations.

244. Defendants' inaccurate reporting on the MSF and IUCU Accounts after Plaintiff clearly requested a correction has caused stress and fear, which has resulted in an aggravation of anxiety, rheumatoid arthritis flare-ups, insomnia, and indigestion.

245.  Defendants' inaccurate reporting on the MSF and IUCU Accounts after Plaintiff clearly requested a correction has caused Plaintiff fear resulting from worry that Plaintiff will not be able to obtain credit to manage future financial emergencies that her family might encounter.

246.  Plaintiff has incurred pecuniary expenses as a result of her efforts to correct Defendants' inaccurate reporting on the MSF and IUCU Accounts.

247.  Plaintiff has suffered ongoing irritation, frustration, and humiliation knowing that her current and potential lenders have viewed Plaintiff's credit reports that fail to reflect her past and ongoing payments on MSF and IUCU Accounts.

248.  As a result, by reporting inaccurate, incomplete, and/or materially misleading account information, Defendants' acts and omissions have caused in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

249.  Creating the false impression that the MSF Account and IUCU Account were negative instead of positive creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's credit reports that is engaged in judgment-based lending.

**FIRST CAUSE OF ACTION**
**FCRA - 15 U.S.C. § 1681 *et seq.***

250.  Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

251.  The foregoing acts and omissions constitute numerous and multiple violations of the FCRA, including, but not limited to 15 U.S.C. § 1681e(b) as to Experian, Equifax, and TU.

252.  Defendants Experian, Equifax, and TU's acts and omissions were in violation of 15 U.S.C. § 1681i as well.

253.  Defendant MSF and IUCU's acts and omissions were in violation of 15 U.S.C. § 1681s-2(b).

254. The above-described violations by Defendants were willful, allowing Plaintiff to recover under 15 U.S.C. § 1681n.

255. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

256. In the alternative, Defendants were negligent in their actions, which entitled Plaintiff to recover und 15 U.S.C. § 1681o.

257. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

## REQUEST FOR A JURY TRIAL

258. Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1. A declaratory judgment that Defendants' actions as discussed herein are unlawful;

2. Plaintiff's actual damages from each Defendant;

3. Statutory damages of not less than $100.00 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), from each Defendant;

4. Punitive damages from each Defendant, pursuant to 15 U.S.C. §1681n(a)(2);

5. An award of costs of litigation and reasonable attorneys' fees from each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) or 15 U.S.C. § 1681n(a)(3); and

6.    Any other relief the Court may deem just and proper.

Dated: <u>June 14, 2023</u>

                                        Respectfully Submitted,


                                        By: <u> /s/Richard J. Shea        </u>

                                        Richard J. Shea, Esq., # 21396-53
                                        Sawin & Shea, LLC.
                                        *Attorneys for Plaintiff*
                                        6100 N. Keystone Avenue, Suite 620
                                        Indianapolis, IN 46220
                                        Telephone: (317) 255-2600
                                        Facsimile: (317) 255-2905
                                        E-mail: rshea@sawinlaw.com